IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| DEANNA PEOPLES<br>2206 Juliet Place #304<br>Greensboro, North Carolina 27406 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES** |
| THE RINGER CENTERS, INC.<br>213 East Bessemer Avenue<br>Greensboro, North Carolina 27401 | ) ) ) ) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve Also:**<br>THE RINGER CENTERS, INC.<br>c/o Stephen W. Ringer, registered<br>agent<br>213 East Bessemer Avenue<br>Greensboro, North Carolina<br>27401 | ) ) ) ) ) ) ) ) | |
| Defendant | ) | |

Plaintiff, Deanna Peoples, by and through undersigned counsel, as her Complaint against

Defendant, states and avers the following:

## PARTIES

1. Peoples is a resident of the city of Greensboro, county of Guilford, state of North Carolina.

2. The Ringer Centers, Inc. is a corporation that is incorporated in North Carolina.

3. The Ringer Centers, Inc. was at all times hereinafter mentioned an employer within the

   meaning of 42 U.S.C. § 2000e *et seq.*

## JURISDICTION & VENUE

4. The Ringer Centers, Inc. hires citizens of the state of North Carolina, contracts with companies

   in North Carolina, and owns or rents property in North Carolina. As such, the exercise of

personal jurisdiction over The Ringer Centers, Inc. comports with due process.

5. The wrongs herein alleged occurred at The Ringer Centers, Inc. facility located in Guilford County and were perpetrated by The Ringer Centers, Inc. and its employees working at its facility located in Guilford County. As such, this Court has personal jurisdiction over The Ringer Centers, Inc.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 in that Peoples is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981.

7. Venue is proper in this District because the wrongs herein alleged occurred in this District.

**ADMINISTRATIVE PROCESS**

8. Within 180 days of the conduct alleged below, Peoples filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 435-2025-00963 against The Ringer Centers, Inc. ("Charge of Discrimination").

9. On or about December 30, 2025, the EEOC issued and mailed a Notice of Right to Sue letter to Peoples regarding the Charge of Discrimination.

10. Peoples received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5, a copy of which has been attached hereto as Plaintiff's Exhibit A.

11. Peoples has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Peoples has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1601.28.

**TITLE VII COVERAGE**

13. At all times referenced herein, The Ringer Centers, Inc. was an "employer" within the meaning of 42 U.S.C. § 2000e(b), in that it was engaged in an industry affecting commerce and had

2

fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

14. At all times referenced herein, Peoples was an "employee" within the meaning of 42 U.S.C. § 2000e(f), in that she was an individual employed by an employer.

**FACTS**

15. Peoples is African American.

16. In the fall of 2023, Peoples applied for a job as administrative assistant at The Ringer Centers, Inc.

17. The Ringer Centers, Inc. is a healthcare business that provides behavioral health outpatient services.

18. The responsibilities and basic requirements of the administrative assistant position at The Ringer Centers, Inc. include answering phones, maintaining a friendly disposition with clients, and having basic computer knowledge.

19. At the time Peoples applied for the administrative assistant position with The Ringer Centers, Inc., Peoples had three years of work experience as a customer service representative for Spectrum.

20. Peoples's three years of work experience as a customer service representative for Spectrum included answering phones, maintaining a friendly disposition with clients, and having basic computer knowledge.

21. At the time Peoples applied for the administrative assistant position with The Ringer Centers, Inc., Peoples had six months of work experience as an administrative assistant at Alcohol and Drug Services, Inc.

22. Peoples's six months of work experience as an administrative assistant at Alcohol and Drug

3

Services, Inc. included answering phones, maintaining a friendly disposition with clients, and having basic computer knowledge.

23. At the time Peoples applied for the administrative assistant position with The Ringer Centers, Inc., Peoples had extensive work experience answering phones.

24. At the time Peoples applied for the administrative assistant position with The Ringer Centers, Inc., Peoples had extensive work experience maintaining a friendly disposition with clients.

25. At the time Peoples applied for the administrative assistant position with The Ringer Centers, Inc., Peoples had extensive work experience with computers.

26. At the time Peoples applied for the administrative assistant position with The Ringer Centers, Inc., Peoples was qualified for the administrative assistant position.

27. Muiryeal Thames interviewed Peoples for the administrative assistant position.

28. At the time Thames interviewed Peoples for the administrative assistant position, Thames was the office manager at The Ringer Centers, Inc.

29. After Thames interviewed Peoples, in or around November 2023, The Ringer Centers, Inc. hired Peoples for the administrative assistant position.

30. At the time The Ringer Centers, Inc. hired Peoples, Peoples had not met the owners of The Ringer Centers, Inc.

31. The owners of The Ringer Centers, Inc. are Robin Ringer and Stephen Ringer.

32. Robin is Caucasian.

33. Robin has the authority to hire, fire, and discipline employees at The Ringer Centers, Inc.

34. Stephen is Caucasian.

35. Stephen has the authority to hire, fire, and discipline employees at The Ringer Centers, Inc.

36. At the time The Ringer Centers, Inc. hired Peoples, Robin was unaware that Peoples was

4

African American.

37. At the time The Ringer Centers, Inc. hired Peoples, Stephen was unaware that Peoples was African American.

38. Peoples was one of two administrative assistants at The Ringer Centers, Inc.

39. The Ringer Centers, Inc. typically employed two administrative assistants.

40. Although the two administrative assistants hold the same title, The Ringer Centers, Inc. typically divides the work between the two administrative assistants such that one administrative assistant handles initial onboarding duties with clients and acts as the first point of contact with clients ("Second Administrative Assistant"), while the other administrative assistant handles insurance matters for clients and other back-end matters ("First Administrative Assistant").

41. The standard practice at The Ringer Centers, Inc. was to have new administrative assistants perform the duties of the Second Administrative Assistant.

42. Whenever an employee who is performing the duties of the First Administrative Assistant resigns or is terminated, the standard practice at The Ringer Centers, Inc. is to assign the First Administrative Assistant duties to the employee who was previously performing the Second Administrative Assistant duties. The Ringer Centers, Inc. would then hire a new administrative assistant to take on the duties of the Second Administrative Assistant.

43. In line with standard company practice, Peoples performed the duties of the Second Administrative Assistant at the time she was hired.

44. At the time Peoples was hired, Danielle [last name unknown] performed the duties of the First Administrative Assistant.

45. Danielle was Caucasian.

5

46. Peoples excelled in the administrative assistant position.

47. About four months after Peoples was hired, Thames conducted a performance review of Peoples's performance as an administrative assistant ("Performance Review").

48. During the Performance Review, Thames praised Peoples's punctuality, organization, upbeat attitude, and her ability to learn quickly.

49. During the Performance Review, Thames did not have any negative feedback about Peoples's performance.

50. About three or four months after Peoples's Performance Review, Thames told Peoples that, although she would typically conduct another performance review around that time, there was no need because Peoples was doing so well in her position.

51. In or around April 2024, Danielle resigned.

52. Based on standard company practice, once Danielle resigned, Peoples should have been given the duties of the First Administrative Assistant.

53. Assigning Peoples the duties of the First Administrative Assistant would have allowed Peoples to gain more experience and broaden her knowledge about the operations of The Ringer Centers, Inc.

54. At the time Danielle resigned, Peoples was qualified to perform the duties of the First Administrative Assistant.

55. The Ringer Centers, Inc. hired Barbara Johnson as administrative assistant.

56. Johnson is Caucasian.

57. Deviating from its standard company practice, The Ringer Centers, Inc. assigned to Johnson the duties of the First Administrative Assistant.

58. The decision to hire Johnson was made by Stephen.

6

59. The decision to assign the First Administrative Assistant duties to Johnson was made by Stephen.

60. Peoples was delegated the duty of training Johnson.

61. Peoples observed that Johnson was a slow learner who had to be shown how to perform tasks multiple times.

62. Despite Peoples closely training Johnson and showing Johnson multiple times how to correctly perform her assigned tasks, Johnson continued to make mistakes.

63. Peoples reported to Robin the difficulties that Johnson was having in her administrative assistant position.

64. Peoples reported to Stephen the difficulties that Johnson was having in her administrative assistant position.

65. Around the same time that Peoples was training Johnson, Thames was training Peoples for the role of office manager.

66. When there was a vacancy in the office manager position at The Ringer Centers, Inc., the standard company practice was to promote the administrative assistant with the most seniority to the office manager position.

67. Thames began training Peoples for the role of office manager because Peoples was excelling in her administrative assistant role and because Thames expected, based on standard company practice, that Peoples would fill her office manager role when she eventually left The Ringer Centers, Inc.

68. Thames praised Peoples for how quickly she was learning the tasks and duties of office manager.

69. In or around September 2024, Stephen, in front of Peoples and other employees, stated that he

7

was told he was not allowed to say "mammy" because it was racially discriminatory.

70. Stephen then said, "I guess it means I can't say nigger either."

71. Peoples verbally objected to Stephen using the word "nigger."

72. Johnson, who also heard Stephen use the word "nigger," laughed in response.

73. Stephen repeated his statement, "I guess it means I can't say nigger either," in response to Johnson's laughing.

74. Shortly after Stephen used the word "nigger" in front of Peoples and other employees, Thames texted Peoples, saying, "On a personal level, it pisses me off too because I'm about to have a biracial child of my own who is still gonna be viewed as a little brown boy or girl in this world, and honestly how dare he say that?"

75. Around Thanksgiving of 2024, Stephen said, in reference to two African American individuals, that he could not tell them apart.

76. Peoples heard Stephen say he could not tell the two individuals apart.

77. In November 2024, Thames resigned from The Ringer Centers, Inc.

78. Thames's resignation created a vacancy in the office manager position.

79. At the time of Thames's resignation, Peoples was the administrative assistant with the most seniority.

80. At the time of Thames's resignation, Peoples was thoroughly trained on all the office manager's duties.

81. According to standard company practice at The Ringer Centers, Inc., the office manager position should have been filled by Peoples.

82. Thames told Peoples that, based on her previously training Peoples for the office manager position and The Ringer Centers, Inc.'s standard company practice, she expected Peoples to

be promoted to the office manager position.

83. The office manager position pays more and has better benefits than the administrative assistant position.

84. The ultimate decision regarding who to promote to the office manager position was made by Stephen and Robin.

85. Soon after Thames resigned, and before any decision was made about who would fill the now vacant office manager position, Peoples expressed to Stephen that she was interested in the office manager position.

86. Soon after Thames resigned, and before any decision was made about who would fill the now vacant office manager position, Peoples expressed to Robin that she was interested in the office manager position.

87. In or around December 2024, Johnson was promoted to the office manager position.

88. At the time of her promotion, Johnson had only worked at The Ringer Centers, Inc. for six months.

89. At the time of her promotion, Johnson had no other experience working in the healthcare industry outside her job at The Ringer Centers, Inc.

90. At the time of her promotion, Johnson had less seniority than Peoples.

91. Peoples was more qualified for the office manager role than Johnson.

92. Peoples in fact trained Johnson on the office manager tasks after Johnson was promoted.

93. On or around January 17, 2025, Stephen told Peoples that, "some people still consider Martin Luther King Jr. Day a holiday," implying there is little significance to that date.

94. On or around January 20, 2025, Peoples talked to Stephen about his racial biases and his racially discriminatory remarks, including his uses of the word "nigger."

95. Stephen said he could not get in trouble for that and also tried to claim he had not used the word "nigger."

96. Given the hostile work environment that Peoples had been facing, Peoples was left with no other choice but to resign.

97. Peoples was discriminated against because of her race.

98. Peoples was retaliated against because of her engaging in protected activities.

99. Stephen and Robin refused to move and promote Peoples out of her administrative assistant role because of her race.

100. Stephen and Robin refused to move and promote Peoples out of her administrative assistant role in retaliation for her opposing racial discrimination.

101. Peoples was subjected to a hostile work environment.

102. Peoples was constructively discharged.

103. Peoples was constructively discharged because of her race.

## COUNT I: <u>RACE DISCRIMINATION IN VIOLATION OF TITLE VII</u>

104. Peoples restates each and every paragraph of this complaint as if it were fully restated herein.

105. Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer to discriminate against an employee "because of such individual's race."

106. Peoples is African American.

107. Peoples was discriminated against at The Ringer Centers, Inc. because of her race.

108. Peoples was denied promotions and opportunities at The Ringer Centers, Inc. because of her race.

10

109. Peoples was denied promotions and opportunities at The Ringer Centers, Inc. that were given to other employees because of her race.

110. Peoples was constructively discharged because of her race.

111. The Ringer Centers, Inc. violated Title VII by discriminating against and constructively discharging Peoples because of her Race.

112. As a result of The Ringer Centers, Inc.'s discrimination, Peoples suffered damages including but not limited to lost wages.

113. Peoples has suffered severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

114. In its discriminatory actions as alleged above, The Ringer Centers, Inc. acted with malice or reckless indifference to Peoples's rights, thereby entitling Peoples to an award of punitive damages.

115. To remedy the violations of Peoples's rights, secured by 42 U.S.C. § 2000e et seq., Peoples requests that the Court award her the relief prayed for below.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII

116. Peoples restates each and every paragraph of this complaint as if it were fully restated herein.

117. Pursuant to 42 U.S.C. § 2000e-3, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter."

118. Peoples opposed an unlawful employment practice when she objected to and complained about racial discrimination at The Ringer Centers, Inc.

11

119. In response to Peoples's opposition to unlawful employment practices, The Ringer Centers, Inc. retaliated against Peoples by, among other acts, denying Peoples promotions and other opportunities.

120. As a result of The Ringer Centers, Inc.'s retaliation, Peoples suffered damages including but not limited to lost wages.

121. Peoples has suffered severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

122. In its retaliatory actions as alleged above, The Ringer Centers, Inc. acted with malice or reckless indifference to Peoples's rights, thereby entitling Peoples to an award of punitive damages.

123. To remedy the violations of Peoples's rights, secured by 42 U.S.C. § 2000e *et seq.*, Peoples requests that the Court award her the relief prayed for below.

## COUNT III: <u>HOSTILE WORK ENVIRONMENT BASED ON RACE IN VIOLATION OF TITLE VII</u>

124. Peoples restates every paragraph of this complaint as if fully restated herein.

125. During her employment with The Ringer Centers, Inc., Peoples was subjected to offensive and harassing conduct by Stephen based on her race.

126. Stephen's harassment of Peoples was sufficiently severe or pervasive to affect the terms, conditions, or privileges or Peoples's employment with The Ringer Centers, Inc.

127. Stephen's conduct had the purpose and/or effect of unreasonably interfering with Peoples's job duties and created an intimidating, hostile, and offensive working environment.

128. The Ringer Centers, Inc. knew or should have known of Stephen's harassment of Peoples.

129. The Ringer Centers, Inc. condoned, tolerated, and ratified Stephen's harassment of Peoples.

130. Stephen's harassment was offensive to Peoples.

131. Stephen's harassment created a work environment that a reasonable person similarly situated to Peoples would find hostile and/or abusive.

132. As a result of The Ringer Centers, Inc.'s allowing a hostile work environment to flourish in violation of Title VII, Peoples has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

133. In its unlawful actions as alleged above, The Ringer Centers, Inc. has acted with malice or reckless indifference to Peoples's rights, thereby entitling Peoples to an award of punitive damages.

134. To remedy the violations of Peoples's Title VII rights, Peoples requests that the Court award her the relief prayed for below.

## COUNT IV: <u>RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981</u>

135. Peoples restates each and every paragraph of this complaint as if it were fully restated herein.

136. The Ringer Centers, Inc. violated Peoples's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

137. The Ringer Centers, Inc., by denying Peoples equal treatment to Caucasian employees and by constructively discharging Peoples, intentionally deprived Peoples of the same rights as are enjoyed by Caucasian citizens to the creation, performance, enjoyment, and all benefits and privileges, of her employment relationship with The Ringer Centers, Inc., in violation of Section 1981.

13

138. As a result of The Ringer Centers, Inc. denying Peoples equal treatment to Caucasian employees and by terminating Peoples in violation of Section 1981, Peoples has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Peoples to injunctive, equitable, and compensatory monetary relief.

139. As a result of The Ringer Centers, Inc. denying Peoples equal treatment to Caucasian employees and by terminating Peoples in violation of Section 1981, Peoples has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

140. The Ringer Centers, Inc.'s denying Peoples equal treatment to Caucasian employees and terminating Peoples in violation of Section 1981 was done with malice or reckless indifference to Peoples's rights, thereby entitling Peoples to an award of punitive damages.

141. To remedy the violations of Peoples's Section 1981 rights, Peoples requests that the Court award her the relief prayed for below.

## COUNT V: <u>RETALIATION IN VIOLATION OF 42 U.S.C. § 1981</u>

142. Peoples restates each and every paragraph of this complaint as if it were fully restated herein.

143. The Ringer Centers, Inc. violated Section 1981 by constructively discharging Peoples because of her comments about and objections to what she reasonable believed to be racially motivated disparate treatment and discrimination against her because of her race.

144. The Ringer Centers, Inc. violated Section 1981 by denying Peoples promotions and other opportunities because of her comments about and objections to what she reasonable believed to be racially motivated disparate treatment and discrimination against her because of her race.

14

145. As a direct and proximate result of The Ringer Centers, Inc.'s unlawful retaliatory conduct in violation of Section 1981, Peoples has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which Peoples is entitled to an award of monetary damages and other relief.

146. As a direct and proximate result of The Ringer Centers, Inc.'s unlawful retaliatory conduct in violation of Section 1981, Peoples has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Peoples is entitled to an award of monetary damages and other relief.

147. The Ringer Centers, Inc.'s unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Peoples, and was done with conscious disregard of Peoples's civil rights, entitling Peoples to an award of punitive damages.

148. To remedy the violations of Peoples's Section 1981 rights, Peoples requests that the Court award her the relief prayed for below.

## COUNT VI: <u>HOSTILE WORK ENVIRONMENT BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981</u>

149. Peoples restates each and every paragraph of this complaint as if it were fully restated herein.

150. During her employment with The Ringer Centers, Inc., Peoples was subjected to offensive and harassing conduct by Stephen based on her race.

151. Stephen's harassment of Peoples was sufficiently severe or pervasive to affect the terms, conditions, or privileges or Peoples's employment with The Ringer Centers, Inc.

15

152. Stephen's conduct had the purpose and/or effect of unreasonably interfering with Peoples's job duties and created an intimidating, hostile, and offensive working environment.

153. The Ringer Centers, Inc. knew or should have known of Stephen's harassment of Peoples.

154. The Ringer Centers, Inc. condoned, tolerated, and ratified Stephen's harassment of Peoples.

155. Stephen's harassment was offensive to Peoples.

156. Stephen's harassment created a work environment that a reasonable person similarly situated to Peoples would find hostile and/or abusive.

157. As a result of The Ringer Centers, Inc.'s allowing a hostile work environment to flourish in violation of Section 1981, Peoples has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

158. In its unlawful actions as alleged above, The Ringer Centers, Inc. has acted with malice or reckless indifference to Peoples's rights, thereby entitling Peoples to an award of punitive damages.

159. To remedy the violations of Peoples's Section 1981 rights, Peoples requests that the Court award her the relief prayed for below.

## **DEMAND FOR RELIEF**

WHEREFORE, Deanna Peoples demands the following:

(a) An award against Defendant of compensatory and monetary damages to compensate Peoples for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(b) An award of punitive damages against Defendant in an amount in excess of $25,000.

(c) An award of reasonable attorneys' fees and non-taxable costs for Peoples's claims as allowable

16

under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Stephen Loelius, Esq.*

Stephen Loelius (62520)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (984) 263-0486
Fax:     (216) 291-5744
Email:  stephen.loelius@spitzlawfirm.com

*Attorney For Plaintiff*
*Deanna Peoples*

17

## <u>JURY DEMAND</u>

Plaintiff Deanna Peoples demands a trial by jury by the maximum number of jurors permitted.

/s/ *Stephen Loelius*

Stephen Loelius, Esq. (62520)

18